IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CINDY C. KILPATRICK                                                                                          PLAINTIFF

VS.                                            CIVIL NO. 05-6055

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                              DEFENDANT

**MEMORANDUM OPINION**

Cindy Kilpatrick ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits ("DIB"), and supplemental security income ("SSI"), under Titles II and XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were filed on January 27, 2003, and July 7, 2004, respectively, alleging an onset date of October 5, 2001, due to shoulder, neck, and back pain and attention deficit hyperactivity disorder ("ADHD"). (Tr. 17, 88-90, 292-294). An administrative hearing was held on October 26, 2004. (Tr. 37-71). Plaintiff was present and represented by counsel.

On November 22, 2004, the Administrative Law Judge ("ALJ"), issued a written opinion finding that, although severe, plaintiff's shoulder pain and ADHD did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 24). At this time, plaintiff was forty-four and possessed a high school education. (Tr. 18). The record also reflects that plaintiff attended cosmetology school. (Tr. 106). Her past relevant work experience ("PRW"), included work as a meat packager. (Tr. 18).

After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the

residual functional capacity ("RFC"), to perform light work, limited by her moderate limitations interacting appropriately with the general public, inability to work overhead with her left upper extremity, and ability to only occasionally perform gross and fine manipulation with her left hand. (Tr. 24). With the assistance of a vocational expert, the ALJ then found that plaintiff could still perform the position of cashier. (Tr. 25).

On June 24, 2005, the Appeals Council declined to review this decision. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 4, 5).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

2

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's determination that plaintiff's ADHD is a non-severe impairment. An ALJ may consider an impairment to be non-severe only if a claimant's medical impairments are so slight that it is unlikely he or she would be found to be disabled even

if their age, education, and work experience were taken into account. *See Bowen v. Yuckert,* 482 U.S. 137, 153 (1987). "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking the vocational analysis." *Id.* at 158.

The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased. *Id.* Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.* Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc).

In the present case, the pertinent evidence reveals the following. On June 9, 1998, Dr. Randall Wells diagnosed plaintiff with impulse disorder, not otherwise specified. (Tr. 157-158). Plaintiff described a pattern of restlessness, impulsivity, and difficulty maintaining focus. (Tr. 157). She also reported chronic academic problems, including continued problems with basic materials, such as multiplication. Dr. Wells noted that plaintiff's symptoms could also represent manifestations of

4

adult attention deficit disorder or generalized anxiety disorder. (Tr. 158). On September 28, 1998, Dr. Wells prescribed Ritalin. (Tr. 151).

On January 10, 2000, Dr. Wells noted that plaintiff's history remained "consistent with any attentional deficit condition." (Tr. 146). He prescribed Wellbutrin and increased her dosage of Ritalin. (Tr. 146).

On January 15, 2003, plaintiff was evaluated by Rehabilitation Services. (Tr. 176-178). Testing revealed a learning disability in math. (Tr. 177). In addition, plaintiff was noted to have possible susceptibility to mistakes in written task performance, difficulty maintaining an adequate production level if more than simple math skills were required, difficulty with spelling tasks, susceptibility to mistakes in task performance requiring attention to details, difficulty maintaining an adequate production level in a restricted work setting which did not take the client's level of activity and inattention into account, difficulty with listening tasks that may result in poor follow-through and/or performance in job setting, difficulty organizing tasks which may result in poor job performance, "distractibility/forgetfulness" which may impact her productivity level, hyperactive behaviors which may distract co-workers, and impulsivity which may result in poor choices in job environment. (Tr. 178).

On May 29, 2003, Dr. Kathryn Gale completed a mental RFC assessment and psychiatric technique review form. (Tr. 233-250). After reviewing plaintiff's medical history, she concluded that plaintiff had moderate limitations regarding her ability to carry out detailed instructions, maintain attention and concentration, complete a normal workday and workweek, and interact appropriately with the general public. (Tr. 233-234). Plaintiff was also found to have mild

5

limitations regarding activities of daily living and maintaining social functioning. (Tr. 247). However, no episodes of decompensation were noted. Dr. Gale also indicated that plaintiff could perform work where the interpersonal contact was routine but superficial, the complexity of the tasks was learned by experience, the judgment required was limited, and the supervision required was little for routine but detailed for non-routine tasks. (Tr. 235).

Further, plaintiff testified that her ADHD caused her not to be able to finish anything she started. (Tr. 51). She indicated that she was not able to focus her attention on a television show or movie that lasted longer than one hour. (Tr. 52). In addition, plaintiff stated that activities had to "get [her] brain going" to keep her attention. She described her condition as follows: "I feel like when I wake up in the morning . . . like there's ten radios blaring in my ear and I have no control over any of them. And, this is my day, all day long without medication." With medication, plaintiff testified that her condition was better, but that she had not yet been given the proper dosage of medication to make her "normal." (Tr. 51).

We note that, although the ALJ concluded that plaintiff's ADHD was non-severe, he found plaintiff to have moderate limitations with regard to her ability to interact with the general public. (Tr. 24). As the aforementioned evidence makes clear that plaintiff also had moderate limitations concerning her ability to maintain attention and concentration for extended periods of time, we believe that remand is necessary to allow the ALJ to reconsider plaintiff's mental impairment and limitations. (Tr. 178, 233-234).

On remand, the ALJ should order a consultative mental evaluation to fully determine plaintiff's mental limitations. *See* 20 C.F.R. § 404.1519a; *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

The consultative examiner should be asked to complete a mental RFC assessment of plaintiff, indicating her specific limitations.

We also note that the record indicates that plaintiff's financial situation and lack of insurance may have prevented her from obtaining more consistent treatment and medication. (Tr. 52, 300). However, the ALJ failed to consider this possibility. Although it is for the ALJ in the first instance to determine a plaintiff's motivation for failing to follow a prescribed course of treatment, or to seek medical attention, such failure may be excused by a claimant's lack of funds. *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984); *Jackson v. Bowen*, 866 F. 2d 274, 275 (8th Cir. 1989). "[T]he ALJ must consider a claimant's allegation that he has not sought medical treatment or used medications because of a lack of finances." *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986) (citing *Tome*, 724 F.2d at 714). Economic justifications for lack of treatment can be relevant to a disability determination. *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992). Accordingly, on remand, the ALJ is directed to consider plaintiff's financial situation.

## Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this 10th day of August 2006.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)